UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SABRINA GIDEON, ) | |
| ) | |
| Claimant, ) | |
| ) | |
| vs. ) | Civil Action No. 2:17-cv-1302-CLS |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant, Sabrina Gideon, who is proceeding *pro se*, commenced this action on August 3, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge, and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Briefs are not required from *pro se* parties in Social Security appeal cases,[1] and claimant did not file a supporting brief. Nevertheless, this court has carefully reviewed the entire record in reaching its determination of the merits of claimant's appeal.

Claimant alleged that she became disabled on October 20, 2012, as a result of fibromyalgia, neck and shoulder blade paralysis, chronic urinary tract infections, chronic kidney infections, severe anemia, depression, anxiety, and chronic pain.[2] The ALJ found that claimant suffered from the severe impairments of fibromyalgia, major depressive disorder, anxiety, degenerative disc disease, and degenerative joint disease.[3] Even so, she found that claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.[4] Moreover, claimant retained the residual functional capacity

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.9767(a) except for the additional restrictions described herein. The claimant can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, and kneel, but never crouch or crawl. She can use her bilateral upper

---

[1] *See* doc. no. 10 (briefing letter), at 1 ("*Unless plaintiff is proceeding without counsel*, initial briefs will be required of all parties.") (emphasis supplied).

[2] Tr. 245.

[3] Tr. 26.

[4] Tr. 27.

extremities for constant reaching, handling, fingering, and feeling. She should avoid work settings with concentrated exposure to extreme cold or wetness, and she should not work around hazardous conditions, such as unprotected heights or moving machinery. The claimant can understand, remember, and carry out simple instructions but not those that are more detailed or complex. She can adapt to workplace changes that are infrequent and gradually introduced. The claimant can occasionally interact with members of the public and frequently interact with coworkers and supervisors. She can sustain attention and concentration for two-hour blocks to complete an eight-hour workday with customary breaks.

Tr. 28. The ALJ then relied upon vocational expert testimony to determine that a person of claimant's age, education, work experience, and residual functional capacity could perform jobs that exist in significant numbers in the national economy.[5] Accordingly, the ALJ found that claimant was not under a disability, as defined by the Social Security Act, from October 20, 2012, the alleged onset date, through the date of the decision.[6]

Claimant requested the Appeals Council to review the ALJ's decision,[7] but the Appeals Council denied her request on June 9, 2017, stating that there was "no reason under our rules to review the Administrative Law Judge's decision."[8] The Appeals Council also stated that it had not considered additional evidence submitted by

---

[5] Tr. 31.
[6] Tr. 32.
[7] Tr. 180.
[8] Tr. 1.

claimant. Part of that evidence was duplicative of evidence already in the administrative record, and the remainder of the evidence did not "show a reasonable probability that it would change the outcome of the decision."[9] The ALJ's decision thus became the final decision of the Commissioner.[10]

Upon review of the entire record, the court concludes that the Commissioner's decision was supported by substantial evidence and in accordance with applicable law. First, the ALJ correctly evaluated claimant's eligibility under Listings 12.04 and 12.06. Both Listings require a claimant to show at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, appx. 1, §§ 12.04B, 12.06B (listings) ("B criteria"). The ALJ found that claimant experienced no more than moderate restriction of activities of daily living, and no more than moderate difficulties in maintaining social functioning, concentration, persistence, or pace. To support that finding, the ALJ

---

[9] Tr. 2, 5-6.
[10] Tr. 1.

4

stated that the "record documents very limited mental health treatment," and claimant's pharmacy records "reflect only intermittent use of antidepressant medication."[11] The ALJ also found that claimant had never experienced extended episodes of decompensation, because there was no evidence "that claimant has ever required any inpatient or intensive psychiatric treatment or experienced any prolonged episodes of exacerbated emotional symptoms."[12] The record supports those conclusions.

Claimant's records from Cooper Green Pharmacy reflect that long periods of time — sometimes a year or more — would go by before claimant refilled her prescription for anti-depressant medication.[13] Additionally, while claimant's function reports reflect some limitations in daily activities, social functioning, and concentration, those limitations were not marked. Claimant reported that she could care for her personal needs, remember to take her medication, prepare meals, drive, go out alone, shop, handle money, attend Bible study, and care for her children.[14] Despite the fact that state agency psychiatrist Dr. Robert Estock stated on May 28, 2014, that claimant had experienced "one or two" extended episodes of

---

[11] Tr. 27.
[12] *Id.*
[13] Tr. 310-12.
[14] Tr. 268-75, 580.

5

decompensation,[15] there simply is no evidence that claimant has been unable to live outside a highly supportive environment on more than one occasion. To the contrary, claimant told the consultative psychological examiner on May 10, 2014, that she had never had any psychiatric treatments or hospitalizations.[16]

Substantial evidence also supports the ALJ's residual functional capacity finding. The ALJ accounted for claimant's mental impairments by limiting her to simple instructions, infrequent and gradual workplace changes, occasional interaction with the public, frequent interaction with coworkers and supervisors, and two-hour blocks of attention and concentration with customary breaks. The medical record does not support the imposition of any additional limitations. As discussed above, claimant received only intermittent treatment for her mental conditions. Additionally, Sharon D. Waltz, Psy.D., the consultative psychological examiner, found claimant to exhibit full orientation, adequate attention and concentration, good memory and fund of information, adequate abstractions, normal thought processes and content, and fair insight and judgment. Dr. Waltz assessed claimant with depressive disorder, not otherwise specified, and assessed a GAF score of 60, indicating moderate symptoms. Claimant's prognosis for improvement with treatment was fair. Dr. Waltz also stated:

---

[15] Tr. 123.
[16] Tr. 578.

> Ms. Gideon does not likely have a life-long history of mental slowness. Ms. Gideon is able to manage financial benefits with assistance. Ms. Gideon has mental impairment present to a moderate degree. Her behavior was cooperative. She has restriction of activities. She has constriction of interests and difficulties relating to others due to mental health symptoms. Ms. Gideon is able to function primarily independently with assistance. Based on the medical findings, Ms. Gideon's ability to understand, to carry out and to remember instructions and to respond appropriately to supervision, co-workers and work pressures in a work setting despite her impairments is Moderately Impaired. She may benefit from vocational, employability and/or social skills training to assist her in being successful in a work environment.

Tr. 580. Dr. Waltz's findings are consistent with the ALJ's residual functional capacity finding. The ALJ's findings also are consistent with Dr. Estock's state agency assessment, except insofar as Dr. Estock found that claimant had experienced episodes of decompensation and would need to be absent from work 1-2 times per week as a result of her symptoms, and the ALJ adequately explained why those findings by Dr. Estock were not supported by the record.[17]

The ALJ also accounted for claimant's physical impairments by limiting her to a reduced range of sedentary work, and the record does not dictate the imposition of any additional physical limitations. During a May 10, 2014 consultative physical examination by Dr. T. Gaston, claimant exhibited normal coordination, station, and gait; normal but painful range of motion; twelve of eighteen trigger points for

---

[17] Tr. 29. *See also* Tr. 127-29 (Dr. Estock's assessment). The ALJ also properly rejected statements by Dr. Estock that were not consistent with the Commissioner's vocational guidelines, including the need for a "flexible schedule" and "supportive" supervision.

7

fibromyalgia; and full grip and motor strength. Dr. Gaston assessed claimant with fibromyalgia and possible cervical spine pathology. He found that claimant could stand and walk for up to six hours during an eight-hour work day, and could sit with no limitations. She had no limitations on lifting, carrying, handling, or fingering. She could frequently reach and climb stairs and steps; occasionally climb ladders, scaffolds, and ropes; and frequently stoop, crouch, kneel, and crawl. She had no workplace environmental limitations. Dr. Gaston noted that claimant's clinical examination was "essentially normal," although claimant did consistently express pain throughout.[18] Additionally, Dr. Max Michael, claimant's treating physician, stated on November 30, 2012, that claimant's fibromyalgia was "moderately severe," an assessment that does not indicate disabling limitations.[19] Even though Dr. Michael went on to state that claimant was "unable to maintain any gainful employment because of her conditions and is therefore disabled," the ALJ properly rejected that statement because the decision of whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. §§ 404.127(d), 416.927(d).[20]

Finally, none of the new evidence presented to the Appeals Council warrants

---

[18] Tr. 571-76.
[19] Tr. 640.
[20] *See* Tr. 30, 640.

overturning the ALJ's decision.

> When a claimant submits new evidence to the AC [*i.e.,* Appeals Council], the district court must consider the entire record, including the evidence submitted to the AC, to determine whether the denial of benefits was erroneous. *Ingram*[ *v. Commissioner of Social Security Administration*], 496 F.3d [1253,] 1262 [(11th Cir. 2007)]. Remand is appropriate when a district court fails to consider the record as a whole, including evidence submitted for the first time to the AC, in determining whether the Commissioner's final decision is supported by substantial evidence. *Id.* at 1266-67. The new evidence must relate back to the time period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b).

*Smith v. Astrue,* 272 F. App'x 789, 802 (11th Cir. 2008) (alterations supplied). Claimant submitted pharmacy records to the Appeals Council,[21] but, as discussed above, those records show only intermittent refills for psychiatric medications. The records do reflect that claimant was consistently prescribed medication for her physical ailments, but the medication list says nothing about her functional limitations, which is the central issue in determining disability status. Claimant also submitted bills for treatment received from Radiology Associates,[22] a letter from Pfizer reflecting that she has been prescribed Lyrica,[23] and a September 28, 2010 treatment note from Dr. Mark Wilson reflecting that she had been diagnosed with

---

[21] Tr. 9-20.

[22] Tr. 38-40.

[23] Tr. 41-42. Lyrica is a drug used for treating, among other conditions, fibromyalgia. *See, e.g.,* www.lyrica.com.

9

fibromyalgia.[24] None of those documents reflect any new information about plaintiff's medical condition and the resulting limitations.

In summary, while is it apparent that claimant suffers from medical and psychiatric conditions and is in some amount of pain, the mere existence of those conditions, and even of the pain resulting from them, is not sufficient to establish claimant's disability. Instead, the relevant consideration is the combined effect of all of claimant's conditions on her ability to perform substantial gainful work activities. *See* 20 C.F.R. §§ 404.1505(a), 416.905(a) (defining a disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). *See also Bowen v. Yuckert,* 482 U.S. 137, 146 (1987) ("The [Social Security] Act 'defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.'") (quoting *Heckler v. Campbell,* 461 U.S. 458, 459-60 (1983)) (alteration supplied).

Without any evidence to support functional limitations greater than those imposed by the ALJ, the decisions of the ALJ and the Appeals Council must stand. The decision of the Commissioner is AFFIRMED because it was based upon

---

[24] Tr. 43-44.

substantial evidence and in accordance with applicable legal standards. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 15th day of May, 2018.

_____
United States District Judge